Good morning, Your Honors. My name is Perry Clark. I represent the appellant, Plaintiff Ballew, Daewoo Electronics America. I'd like to reserve three minutes of my time or whatever is left to address any issues. Today's case raises an unusual application of the principle of res judicata. This is not your normal res judicata situation. Normally, you would have a case filed, resolved, judgment, then a second case brought, and the defendant in that case raises their hand and says, well, look, this is res judicata. This was already resolved in this previous case. We don't have that in this case. In the alleged second case in this string of cases, we have litigation where the defendants did not raise their res judicata defense. And there's a reason why. The second case, in sort of their view of the world, was related to a guarantee agreement. And their whole argument in that second case was, this guarantee agreement has nothing to do with the debts of GoVideo, the wholly owned subsidiary that accrued in the earlier case. That was their strategic decision. And that explains why they didn't raise res judicata or the entire controversy doctrine in that second case. So now when we get to this third case, res judicata having not been raised, that defense is waived. That's a waived defense under federal law, rule of eight delineates in front of defenses that must be pled. They were not pled. And it's also been waived just under- Because it was not pled in a prior case. Because it was not pled, right, in the guarantee case. But the guarantee case is a different kind of case than this case. You're right. It is a different kind of case. Right? I mean, if you talk about the guarantee case, we're talking about a contractual duty by certain parties to another party if another party defaults. In this case, we're not talking about that at all. In fact, we're talking about I am responsible for the first publication. I'm not going to guarantee it. I am responsible myself because I am the alter ego of or I am the one who got all the stuff, so therefore I am it. In the first case, which is the guarantee case, the most I can have is a $5 million obligation because that's all the guarantee was. In this case, I can get to the whole 7.7 because I am the person. It's a different case. You're right. It is a different case. So I don't understand how then it would be race judicata, how they would even suggest that the same kind of defense on the guarantee case would be the defense in this case. Right. You're right. And I think I should preface my arguments by saying under the appellee's view of the world. Well, I'm just trying to say let's take your view of the world. I mean, in the first case, it was all about the guarantee. That was in New Jersey. You're right. It was. And the New Jersey court said, well, the New Jersey court didn't get a lot of chance to say because everybody started running 40 ways and then the case got done and then there was a judgment given to you. So the New Jersey court didn't really come out, really get a chance to say all it might have said. But now we're in a new case and it's brought out here, and now it's not attacking the guarantee. It's attacking that you are the person. So unless I would suggest that the entire controversy doctrine applies, it seems to me this case is over. You're right. And Res. Chicano would not apply to bar this case. Right. I think that's absolutely right. And that's what Jackson is. So then I say to myself, why would the entire controversy doctrine apply here? Right. Because you're asking now for California to – even if I say California now is a New Jersey court, you're asking the California court to say, would New Jersey apply the entire controversy doctrine? And as I read the cases, unless everything happens in New Jersey and it's going to affect the New Jersey courts about how long it goes and how many resources it goes, they would not apply the entire controversy doctrine. So, therefore, why should California do it? Right. I think that's absolutely right. And I think the first part of what you said was what Judge White, the first judge who looked at this issue, said. I mean, he said exactly what you said. All that I thought from White is right. Right. And so then on the entire controversy, again, I think you're also right. I think we can make this more complicated than it needs to be. If this case had been filed in New Jersey, wouldn't a New Jersey federal court dismiss this under the entire controversy doctrine? It may well. Well, if it may well, then why might we well do that in California? I think that it doesn't change moving it from New Jersey to California. If a New Jersey federal district court would do that, we feel obligated to do that. I think that the federal court in California has got to do that, right? What is the difference? Yeah. The difference is, so if you start – it's a couple-step analysis. But if you start with the principle enunciated by the Supreme Court in Semtec, that court said, you know, you have a federal court sitting in diversity. That judge, they applied the rules that the state court in which it would sit would apply. That would be New Jersey. New Jersey has the entire controversy doctrine. So then we look and we say, okay, well, what does New Jersey say about its entire controversy doctrine? What does it say about the extraterritorial effect of the entire controversy doctrine? And fortunately, we have the New Jersey Supreme Court ruling in the mortgage-linked case addressing that precise question. Does the entire controversy doctrine apply extraterritorially? Must it be applied by courts outside of New Jersey? Mortgage-linked, I reread it again this morning. It's a very odd decision. And it's got quite a bit of nuance in there. For one thing, you had a joinder of parties rule that has now been abandoned in New Jersey that was a little more vigorous in New Jersey than it was in other places. We're not talking about joinder of parties here, really. We're really talking about joinder of claims. And that's far more within sort of traditional race-judicata rules. Right. That is that the entire controversy doctrine has always had the joinder of claims aspect to it. Right, right. But when they were concerned about sort of the extraterritorial effect, they were concerned about the Pennsylvania case in which you had not joined all of the parties. You had made the same claims against Pennsylvania defendants, and now they were going against the New Jersey defendants. And the question was, well, should we impose this doctrine on a federal district court sitting in Pennsylvania for not having included all of the New Jersey defendants? Right. And the point I'm essentially making is that the entire controversy doctrine, you know, then and now included claims. It included joinder of parties then, but it's always included joinder of claims. And the ruling, the Supreme Court was clear in March, like, they said, we do not export our entire controversy doctrine to courts outside of New Jersey. And so how did New Jersey decide to do that? If the federal rule for federal courts is that if we're sitting in diversity, we have to behave as though we were, understanding that we still follow our own procedural rules, we have to do this as though we were courts in New Jersey, then we have to behave as though we're state courts in New Jersey. That is correct. But, again, the question is here, you know, the behavior question, it's what effect would a New Jersey court give to a New Jersey judgment outside of New Jersey? In other words, the point is the New Jersey courts can decide the limits, the territorial limits, extraterritorial limits of their procedural rules. How does New Jersey get to decide that they'll have one rule inside of New Jersey but the courts outside of New Jersey don't have to apply the rule? Yeah, I don't have as much of a philosophical problem with that because I think it does make sense to me to say, well, the courts can, you know, a court in California can say what courts in California can do. A court in New Jersey can say what courts in New Jersey do. And I don't think it's an actual sort of precedent-setting function of a state Supreme Court to say this is the rule that should be followed in New Jersey, but if somebody in Wisconsin is concerned with New Jersey, don't bother. Right. In other words, this is our rule. This is our rule to manage our documents, our dockets. We're going to have this extremely robust res judicata law. We're going to call it the entire controversy doctrine. And we want to have this for our courts. But the problem comes, and this is where I was leading you, the problem comes, it seems to me, that the New Jersey court is the court I'm trying to be. I'm applying New Jersey law in a New Jersey case, even though filed in California. Everything about it has to do with New Jersey. Everything. What law to apply, what we do about it, where we go. Even though the case is filed in California, nobody's arguing we're applying California law or we're putting in law that's outside of California or that's outside of New Jersey. Everything goes back to New Jersey. So if, in fact, I'm applying New Jersey, New Jersey, New Jersey every time, then why is the entire controversy doctrine not applicable here? Because New Jersey, New Jersey, New Jersey, I'm acting as if I'm in New Jersey now. It isn't as if I'm acting as if I'm outside of New Jersey and whether I have to apply some different concept. I've got New Jersey all the way through. I'm just behaving, doing the same thing New Jersey would do with New Jersey courts. And that would make it such that the entire controversy doctrine would have been applied. If nobody, if you'd have filed this in New Jersey, there's no question it would have been dismissed. Because you go out and file it in California, the fact that nobody fights that New Jersey law should not apply, nobody fights that we ought not apply these concepts as New Jersey would apply them, then why is it that New Jersey law would not be the end result in the entire controversy? Try and understand your argument. That's what I was leading up to. That's what I was giving you credit for. But now, here I am. I'm a New Jersey judge now. Right. And where I think the focus needs to be is what does, if we're applying New Jersey law, what does New Jersey law say about the application of the entire controversy doctrine? It says, the market says we're not going to have any more New Jersey courts deal with 40 different cases. They're all going to be in the same case. And now I'm a New Jersey judge. I've been clothed with New Jersey. You said I could use New Jersey law. I'm a New Jersey judge. Why is the entire controversy doctrine not applicable? Right. And I would also disagree in that the court here in California is not a New Jersey court. It's a federal court sitting in diversity. I understand where it is, but it's got to apply itself as if it is the New Jersey court. Right. And then, and I agree with you, but then the question is what is the New Jersey law that we are applying? Right. And the New Jersey law that we apply is what the New Jersey Supreme Court said about the extraterritorial effect of the entire controversy doctrine. Are there any facts, sorry, are there any facts that were learned after the New Jersey case was over? After the first case, the default judgment case or the guarantee? Guarantee. Yeah, there were facts that were learned from, you know, securities filings of these defendants. You know, the one fact that was. I'm just trying to figure out if there's some kind of factual circumstance that couldn't have been thought of or couldn't have been gained or couldn't have been something you would have known or should have known such that you could have brought this case when you brought the other case. The guarantee case. Right. I wasn't counsel on the guarantee case. I understand. But. Nonetheless. Yeah, right, nonetheless. You know, I think the, you know, there were facts that were learned. There was actually another litigation that happened that was brought by another company, MPEG LA, against these very defendants, and that's really what got the ball rolling. Not about there were new facts learned. I mean, new facts. You started the guarantee case on a certain time. There are facts up to the point of the guarantee case. I couldn't find in this, in any of these, if you will, or any of this record, to suggest there are any facts after that day which make your case better. Well, you know, I guess you could go through. I mean, you could talk about another lawsuit, but they were, again, about the same facts that you had your guarantee case about. They're not talking about facts after the guarantee case. They're talking about the very facts you had in mind, in hand, could have alleged at the same time. Right. Well, I could tell you that in terms of facts that were available, you know, to us, there were facts that were learned after the fact. Right. There were facts of actions done after, or facts that could have been known had you had sufficient discovery. Yeah. I mean, they probably would have been known had we had discovery in the guarantee case, but the guarantee case, you know, obviously just went away by the summary judgment. Absolutely. If you had filed the suit literally in New Jersey State Court, would the state court say, gee, this was under, if this had been filed, if the first cases had been filed in New Jersey State Courts, no question the entire controversy doctrine would apply, but because it's federal court, we don't care about wasting the resources of the federal court. It's not of concern to us, so we won't apply the entire controversy. Is that your position? You know, I can't say. I can't put myself in that judge's position, but if they had, but I think the key point to remember is under mortgage link, if they had applied the entire controversy doctrine, like let's say in the guarantee case, we had brought these alter ego claims and let's say they had raised the entire controversy doctrine in that guarantee case, or let's even say in the guarantee case, they say, Hey, you know, the entire controversy doctrine says you have to bring everything in the very first case. You should have brought the guarantee in the default judgment case because that's what the entire controversy says. Everything you can think of. If that, if the guarantee case or an alter ego case had been dismissed by the New Jersey court under mortgage link, that just so would have been without prejudice. And what mortgage link says is that that case could have been brought in another federal court, right? Because remember what they said in mortgage link, the issue in mortgage link was they had the first Pennsylvania case, they had the second New Jersey case, and then they had a third Pennsylvania case. And what happened was the New Jersey case was dismissed in light of the earlier Pennsylvania case. And then that went all the way up to the New Jersey Supreme Court. In the meantime, there was this other Pennsylvania case. The New Jersey Supreme Court said, okay, yeah, this dismissal is fine, but this dismissal should have been without prejudice. So it could be pursued in this other Pennsylvania diversity case. And I realize that's a complicated web to weave, but I think that is the web that the New Jersey Supreme Court may weave. I feel like you answered my question. So let me ask the question one more time. So given that we have a prior New Jersey district court case, federal district court case, if you had filed your suit in state court in New Jersey, would the entire controversy doctrine bar the suit? I don't know that it would. I mean, I can see an argument for it being barred, right? And the reason that you would argue that it's not a bar is what? In New Jersey? Yeah. Well, I would say, you know, in New Jersey, if you're arguing to a New Jersey court, and the New Jersey court says, I'm thinking about applying the entire controversy doctrine, your argument to the court is what? And we're saying this is a completely hypothetical case, right? This is not in anything that actually happened out here, right? It's, like, not related to the court. So in a situation where, yeah, I mean, I think that is what the entire controversy doctrine says, right? If you're in a state court in New Jersey, Right, but a prior judgment was in a federal district court in New Jersey. I think, yeah, if you were in a state court in New Jersey, Does a state court apply the entire controversy doctrine? Yeah, I think a state court, I mean, I think that's what, because it's a New Jersey procedural rule, right? So that would be a procedural rule. Even though it's giving effect to a judgment in a federal court. Yeah, I think it's a procedural rule. I mean, I'm not sure, I'm actually not sure about that, about if it was a form of federal diversity case. I'm not sure, but I will agree with you, if it was a state court, New Jersey state court, to New Jersey state court. I absolutely agree with you, yeah. And I'm sorry I can't, you know, answer that more directly. But again, I think, you know, as I said, I think mortgage length is, you know, I think what that question presupposes is that the question is, you know, the application of New Jersey law. But I think you need to look at the law that we apply. And the question is, what is the extraterritorial effect of entire controversy under New Jersey law, not, you know, what is the entire controversy. I hope I made that clear. All right, thank you, Mr. Clark. We've taken too little of your time. I will afford you a minute for Mr. Sandell. Good morning. May it please the Court. My name is Lawrence Sandell. On behalf of Dependent Appellate Liaison with me is Reese Neinstadt. The posture of this case is plainly laid out by the district court. It is rather straightforward. In the 2008 to 2010 New Jersey case, DeWu sought to have the GoVideo debt satisfied by appellates. And even though DeWu admittedly could have pursued other theories of recovery, including the alter ego and successful liability theories, DeWu elected to only pursue recovery under its guarantee contract theory. It lost, and in this case here, he sought to drag the appellates back into court for a second bite at the apple. But the parties agree that New Jersey's law of claim reclusion applies here. And DeWu has not disputed that if New Jersey's entire controversy doctrine applies, this case is concluded. And there is no dispute that all of the appellates are deemed to be in frivolity with the defendants in the New Jersey case for the purposes of this appeal. So despite the extensive briefing the disputes here are actually rather limited. They are first, whether New Jersey's entire controversy doctrine governs this appeal. Second, if the appellates somehow waive their right to contest DeWu's purposeful strategy of engaging in piecemeal litigation. And third, if it is determined that res judicata principles govern and not the entire controversy doctrine, whether claim reclusion is still appropriate. Did the district court ever address the entire controversy doctrine? The district court, and are you referring to Judge White's opinion? I'm talking about the district court here, this last opinion. Um, I believe it was referred to, um... I mean, when I read this last opinion by the district court, it never talks about the entire controversy doctrine. It's talking about res judicata. It's talking about whether res judicata applies, but I don't find the place where it talked about the entire controversy doctrine. There is a little bit of a murkiness in the law as to whether the entire controversy doctrine is part of the res judicata or it's kind of two distinct concepts within New Jersey law. My recollection... So he's suggesting he does because it's murky and it might be a part of the whole, and therefore he's got a couple of references to... My recollection is that in, uh, one of the citations, I think it does refer to the entire controversy doctrine, but I'm not 100%. All right. I'll look again. I had a tough time with that. Um, and a lot of the New Jersey case law does blend the two together. So... But we ultimately, it's our position that the entire controversy doctrine is part and parcel of New Jersey's preclusion law and that it governs here. David does not identify any authority that applies mortgage-link, which is a 1995 case, in the manner that it advocates. It sets no case where a foreign court declined to apply the entire controversy doctrine based on a New Jersey court's final ruling that is on the merits. And post-mortgage-link cases make it abundantly clear that the entire controversy doctrine applies to federal courts, such as this one, where the earlier precluding decision was made by a New Jersey court. In Hoffman v. Nordic Natural in 2015, the New Jersey federal district court stated, quote, contrary to plaintiff's contention that the entire controversy doctrine does not apply to a federal court's interpretation of a prior federal decision, the Third Circuit has consistently held that the entire controversy doctrine is applicable in state court actions as well. And this goes to my question to Mr. Clark. So let me pose the same hypothetical to you. So in Hoffman, you have a federal district court in New Jersey sitting in diversity, deciding that it will... that the matter is pardoned because something was filed in New Jersey state court. Now, what about the flip? What if we had a federal district court? I'm sorry, what if we have a New Jersey state court that has before it a judgment issued by a district court in New Jersey? So the second case would be New Jersey state court? The second court is filed in state court. First case filed in district court. Do you apply the entire controversy doctrine to that? I believe that it would. And this is my question to Mr. Clark as to whether New Jersey is going to look at that and say, well, we're only here to preserve our own resources. We don't care that the fact that you spent this time in federal court. I believe that it would, Your Honor. It would toss us through. Does it make a difference if both courts at issue are federal courts? It does not make a difference. That's not exactly Hoffman. Hoffman was a district court in New Jersey reviewing a judgment by a New Jersey state court. I believe that's what you just told us. I believe, oh, I can't hear part of you. One second, I believe that Hoffman actually, the first case... That's my recollection. That's what you just told us. Maybe I'm wrong. In Hoffman, the first case was a class action case that was originally a New Jersey state court. It was then removed to the District of New Jersey. It was removed. It was removed, so that was the first reaction. And the second case was also a class action case filed in the New Jersey state court and removed to the district court. And they found the entire contradiction doctrine to preclude the case. Does Hoffman, when I read Hoffman, it seems to me that if I read Hoffman correctly, even New Jersey law is unclear whether the entire controversy doctrine would apply. So, I mean, here's what it says. Even after Semantec, courts in our circuit have routinely applied Paramount Aviation to reject applying New Jersey's entire controversy doctrine when the first judgment was not rendered by a New Jersey state court. The entire controversy would preclude claims brought in the federal court. Then after Hoffman, we get Chavez. Chavez, again, declines to resolve the issue. A note that several other courts, and I'm quoting, adopt different policies about intra- and extra-jurisdictional claim preclusion. See also McHale v. Kelly. So I guess I'm trying to figure out, is it clear what New Jersey would do? I believe it is clear. New Jersey would apply the entire controversy doctrine. Well, Hoffman doesn't seem to be quite as clear about that. I don't know. I read you what they said. 278, no, 39. You just say it would. I hear you. I'm just wondering if you focused in on that language. I'm sorry, I'm not familiar with that particular language. But I also will note that before Hoffman, there was another case. Wiggins v. String, which was another case in the District of New Jersey in 2013. That case sort of went through a similar analysis that I'm representing that Hoffman did. That case, the analysis was a little bit different because the first federal case was a federal question. And because the first federal case was a federal question, they applied federal res judicata rather than New Jersey law and the entire controversy doctrine. And so, I mean, if you agree with me that Hoffman did apply the entire controversy doctrine, in a second district court case, a second diversity case, following a first diversity case. I don't think Hoffman did that because what it did, it narrowed on the narrow res judicata doctrine, which obviated the need to resort to the entire controversy doctrine. If I read Hoffman correctly, they said a lot of stuff about the entire controversy doctrine, but when they got to their decision, they declined to resolve it and instead said, hey, we're going under this narrow res judicata doctrine. They resolved it that way. That's my point. I believe you're actually correct, Your Honor. So I'm only reading their victim when I'm trying to say what they were saying. But because they really didn't do that in their holding. There is one additional case that we discovered in preparation for this hearing. It's not part of the record yet, but it is a Second Circuit case that involved a similar issue. And we discovered this partly in response to Dava's allegation that there's no authority that supports extraterritorial application of the entire controversy doctrine. The case is anonymous, verse K. It's in the Second Circuit from 1996, so it's also post-mortgage-like. We're happy to submit a short statement of supplemental authority if the court would be amenable. What you can do is talk to the clerk after the proceedings here. He'll also provide a copy of the... he'll give you a tear pad. It'll be provided to us. You'll provide one to a posting counselor as well. But in this case, just as one-sentence summary for now, the Second Circuit affirmed the New York federal court's entire controversy doctrine dismissal of a complaint that was dismissed in view of a prior New Jersey state action. Would you turn to the question as to whether race judicata, just a simple doctrine of race judicata, requires dismissal here? That was the basis on which the district court announced its decision. Yes, so we do believe that it does. The first district court decision applied the law in this court, which actually we believe was in error, and it should have actually been applying New Jersey's race judicata to the extent that the entire controversy doctrine is not part of that. And New Jersey's race judicata applies to claims that, quote, grow out of the same transaction or occurrence as the claims of the earlier case. And there is no dispute that both this case and the New Jersey case are intended to remedy the same wrong and the nonsatisfaction that GoVideo did. And it would every opportunity to remedy this single wrong in the New Jersey case and made a conscious decision not to do this, and its counsel actually testified as much below. And in addition to this... But just a minute. If we're really going to go to New Jersey laws, you ask us to. We're really talking whether they grow out of the same action. We're talking about three on race judicata, right? Yeah, and we're talking about New Jersey race judicata that separates from... No, then the first. Are the acts complained of and the demand for relief the same? Are you referring... Tell me. Are the acts complained of and the demand for relief the same? The New Jersey, if you will, guarantee action versus this action. Are you referring to the three-part New Jersey test? Yes. Well, it's four-part. The three-part is the prior judgment must have been final, the parties to the subsequent action must have been the parties to, and then the last is the claim in the later action must grow out of the same transaction as the claim in the earlier one. And as I understand it, only out of the same is the only thing we're disputing here. So then I went to New Jersey. How do we determine whether they grow out of the same? The first is are the acts complained of and the demand for relief the same? The second is are the theories for recovery the same? The third is are the witnesses and documents necessary for trial the same? And the last is are the material facts the same? And when I go to those, if you will, and that's why I'm trying to get you there, are the acts complained of and the demand for relief the same? In the first action, we're not depending on GoVideo's obligation. We're depending on the defendant's independent contractual obligation or the guarantee. And in this action, we're talking about GoVideo's obligation because now they want $7.75 out of your hide before they can only get $5. I think I need to correct a little bit of a misunderstanding. So GoVideo's involvement was only in the first case, and that ended in default. But they're now suggesting you're GoVideo by alter ego or successor liability. So in both suits, the same act, which is actually non-satisfaction of his GoVideo debt. Now, wait a minute. You wouldn't have been liable in the first suit on a guarantee more than the contract of the guarantee. There's nothing. If you could be found liable, it had to go to that contract. That was the only thing that held you liable. In this action, quite a different case, everything GoVideo does becomes your obligation because you are the alter ego. That's a different cause of action. That's a different act complained of. We already are correct that the amounts are slightly different than are requested in the first act and the second act, but the bulk is the same debt in the first. Well, the first one you couldn't have paid the bulk. The best you could have got was $5 million. I'm sorry. Not the best you could have paid for them. For them, yes. And here, you can pay the whole GoVideo debt. So the first one was $5 million. The second one was a little over $7 million. That's .75. So that's a nice chunk of change in between. But I would argue that there's a common bulk in between the two. And given that they could have sought that initial amount in the full amount in the first case, which I was not to, that would preclude them. And before I conclude, I'd like to also point out that one of the Appleys, TCL Industries Holdings Limited, was dismissed from this case for lack of personal jurisdiction. And this is in docket 75 below at pages 147 to 153 of the supplemental excerpts of record. And Daewoo did not contest this ground of dismissal in its appeal briefs and has waived any argument on that ground. So, in conclusion, Appleys request that this court affirm the district court's dismissal. Thank you. Mr. Clark, before you come up, the court will take a brief recess, and then we'll come back. So hold your thoughts while we write that note. Thank you. If you're seated. All right, Mr. Clark. Thank you, Your Honor. So the point I'd like to address, and I apologize if I didn't hit the nail on the head with your question, but your question was, if you had a federal diversity, like a federal district court, issues of diversity, is any of diversity issues judgment, then you have a state court in New Jersey applying the entire controversy doctrine. Would the entire controversy doctrine, you know, kick into effect in the state court? And I think, you know, for the sake of argument, let's say it would. Right? Let's say that under New Jersey law, the entire controversy doctrine would apply. That state court would have to apply New Jersey law and apply the entire controversy doctrine. Our position is that in Mortgage Lake, you know, the New Jersey Supreme Court said that while it's true, New Jersey state courts have to apply the entire controversy doctrine, courts outside of New Jersey don't. Right? And I think they were clear. I mean, they said, we do not export our entire controversy doctrine to other jurisdictions. We merely hold that our notions of procedural fairness do not permit the claims that could have been brought elsewhere to be brought in New Jersey. And all we're saying is we're not in New Jersey. Right? And so while you look to New Jersey law to determine the claims,
judges: Bybee, N.R. Smith, Kobayashi